48 CCPA

**Application of Elbert O. THOMPSON.**
**Patent Appeal No. 6598.**

United States Court of Customs and Patent Appeals.
April 14, 1961.

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'CONNELL*, pursuant to provisions of Section 294(d), Title 28 United States Code.

Philip A. Mallinckrodt, Salt Lake City, Utah, for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

KIRKPATRICK, Judge.

This appeal is from the decision of the Board of Appeals of the Patent Office affirming the examiner in his rejection of claims 7, 8, 15, 16 and 17 of a patent application, serial No. 411,510, filed by Elbert O. Thompson for a "Method of Dentistry and Apparatus Therefor." Broad method claims 20 to 24, inclusive, have been relinquished and all the claims now in issue are for apparatus.

The main purpose of the apparatus claimed, as set out in the specification, is the evacuation from the mouth of a patient undergoing dental treatment of a sufficient volume of water to allow

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of* *Judge O'Connell*, pursuant to provisions of Section 294(d), Title 28 United States Code.

the dentist to use a relatively heavy wash stream when playing water upon the tooth being drilled. The specification points out that the two types of ejectors in general use are both unsatisfactory—the conventional saliva ejector, because it lacks the capacity to carry off a stream of water of the volume which the applicant considers desirable, the customary surgical aspirator, because it employs suction of such strength that it may injure the delicate tissues of the patient's mouth. Apparently, an ordinary vacuum cleaner, when operatively connected with a tube, gives the proper suction to allow dental operations to be carried on under a sizeable stream of water without danger of injury to the patient.[1] This record discloses nothing to indicate that the invention does not accomplish its purpose.

Claim 15 may be taken as a basis for discussion and is as follows:

"In evacuation apparatus for dental and surgical work utilizing a stream of fluid projected on an area being worked upon, said apparatus including a fluid-conducting tube, at least the outer reach of which is flexible and of length adapted for manipulation relative to a patient and is provided at the outer, intake end thereof with inflow orifice means, air-suction means operatively connected with said tube, and a liquids and solids entrapment device interposed between said tube and said air-suction means, in fluid-flow communication therewith, the improvement, comprising a fluid-conducting tube and inflow orifice means as specified which has inflow and conducting capacities, respectively, of at least approximately eight cubic feet of air and entrained matter per minute; and air-suction means as specified which has an exhaust to atmosphere and is capable in normal operation of evacuating from the patient said approximately eight cubic feet of air and entrained matter per minute through said tube and orifice means and which does not develop a static suction of more than approximately five inches of mercury at the said inflow orifice means."

The board rejected all the claims now before the court upon a single reference, namely, Martinet 2,627,937.

Martinet's device is simply a vacuum cleaner of the canister or vertical tank type and, like most if not all cleaners of that type, has a filter device in the tank to protect the motor-fan unit in the dome and to retain and collect in the tank the dust, dirt and foreign material picked up by the cleaner in use. The board held that Martinet's apparatus, which has the volumetric capacity and static suction specified in the appellant's claim, has suction means and a flexible hose which fully meet the corresponding elements of the claims.

As to the entrapment device, the appellant concedes that certain elements appearing in his specification and drawings are identical with the paper cone and tank of Martinet but contends that those elements are not the claimed "liquids and solids entrapment device interposed between said tube and said air-suction means." That, he says, is to be found in a different filter receptacle through which the tube passes, disclosed in the specification and drawings as being placed outside of the tank of the vacuum cleaner and at a distance from it.

Claim 15 calls for only one entrapment device and, if the Martinet structure has an entrapment device which meets the language of the claim, it is immaterial that the appellant's specification and drawings show an additional one, not claimed. The question, therefore, is whether Martinet's paper cone and re-

---

1. The specification says, "As aforestated, there are commercially available suction cleaner units which satisfy all the requisites of this invention."

ceptacle meet the language of the claim. We think they do.

The appellant contends that the "air-suction means" of claim 15 is the entire vacuum cleaner including both the entrapment portion consisting of the filter cone and receptacle and the motor-fan suction unit in the dome of the receptacle. Therefore, he says, since the filter cone and receptacle in the vacuum cleaner are a part of the air suction means, one must look to the external filter receptacle for the entrapment device of the claim. Inasmuch as the motor-fan unit of Martinet can be aptly described as "air-suction means" without including the entrapment assembly consisting of the bowl and receptacle, this argument is an attempt to limit the claim by the specification, which is inadmissible. Hence, claim 15 reads directly on Martinet and cannot be allowed.

■ As stated, an element not claimed may not be supplied by the specification and the specification may be resorted to only in case of ambiguity in the claim. In the present case, if there were any ambiguity as to what elements the phrase "air-suction means" refers to, it would not be resolved in the appellant's favor by the specification. Where the specification refers to the vacuum cleaner as a whole, including all its various elements, it is called, not "air-suction means," but "suction cleaner unit" and in several places is identified by the numeral 18 which, in the drawings, marks the entire unit. On the other hand, where the specification is dealing with just the motor and fan in the dome of the vacuum cleaner, the term "motor-fan unit" is used with the identifying numeral 23. The terms being thus defined, it is clear that, when the appellant describes his entrapment device as being between the tube and the air suction means, he has aptly and accurately located Martinet's cone filter entrapment device.

■ It is true that claim 15 calls for a *"liquids* and solids" entrapment device, but, as has been pointed out, the claim does not call for two entrapment devices, and the bowl of Martinet with its paper cone and disc filters is capable of entrapping both liquids and solids. In fact, the appellant, who freely concedes that his cone and bowl construction and Martinet's are identical, points out in his specification that "Any moisture (liquid) * * * which may escape elimination * * * will be deposited in suction cleaner receptacle 19 or caught by filter cone 25." That is saying, in effect, that both his and Martinet's device will entrap water and, of course, solids. In short, claim 15, construed broadly, as we are bound to construe it, is not limited to a structure supplied with a separate catch receptacle external to the tank.

■ Claim 16 merely limits the air suction means of claim 15 by specifying that it shall be a fan. Claim 16, therefore, must fall with claim 15.

■ Claim 7 further limits claim 16 by specifying that the air evacuation unit shall consist of the receptacle and filter as well as the other structures of Martinet. This limitation, when inserted in claim 15 in lieu of the "air-suction means," does accomplish the result contended for by the appellant, that is, it includes the entrapment device of Martinent within the appellant's "air-suction means," and we must look to the specification to find the claimed liquids and solids entrapment device. They appear as the external filter receptacle, thus distinguishing the structure from that of Martinet.

■ Claims 17 and 8 stand upon a different basis. Like claim 15 they call for "a liquids and solids entrapment device interposed between said tube and said air-suction means" but add a "removable and water-resistant filter receptacle disposed within the entrapment device for catching and retaining solid matter carried by the incoming stream of air" (claim 17) or "the entrapment device includes, internally thereof, a removable, water-resistant, filter receptacle for solid matter removed from the stream

of air" (claim 8). Martinet does not disclose such a structure since his only entrapment or catch device consists of the cone and the bowl taken together. The bowl is a receptacle but it is not "disposed within" itself. The cone is not a "receptacle" because the material which it collects would be deposited on its external surface rather than in the interior as would be the case if the word "receptacle" described it.

Claim 17, 8 and 7, therefore, do not read on the Martinet disclosure. Inasmuch as there is no other art cited against the application and the board's decision rests entirely upon Martinet, we hold that the decision is erroneous as to claims 17, 8 and 7, and it is reversed as to those claims.

The decision is affirmed as to claims 15 and 16.

Modified.