50 CCPA

**Application of Charles E. TIBBALS.**

**Patent Appeal No. 6994.**

United States Court of Customs and Patent Appeals.

May 16, 1963.

Francis C. Browne, Washington, D. C. (William E. Schuyler, Jr., Andrew B. Beveridge, Joseph A. DeGrandi, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Associate Judges.

ALMOND, Judge.

Appellant, Charles C. Tibbals, appeals from the decision of the Board of Appeals affirming the examiner's rejection of claims 27 and 28 of application Serial No. 657,184, filed May 6, 1957, entitled "Method of and Apparatus for Making Parquet Flooring Blocks." The two appealed claims are directed to a method and were rejected on prior art. All of the apparatus claims of the application were allowed.

Claim 27 is illustrative and reads as follows:

"27. In a method of assembling individually elongated slats into parquet flooring units each comprising a plurality of slats, the steps of separating from a continuous column of slats consecutive groups of slats each sufficient in number to form a flooring unit, conveying said groups of slats in sequence with consecutive groups spaced from one another in an arcuate path in which the composite wear surface defined by a given group of slats is concave, maintaining the concave configuration of the composite wear surface of the slat group while each slat thereof is secured to a common backing element for the group, the backing element bridging the gap between adjacent groups of slats, and severing the backing element to separate groups of slats from one another."

The invention in issue relates to a method of assembling slats into parquet flooring blocks. The novel feature of the blocks is the provision of sufficient space

between individual slats to permit expansion and contraction with changing moisture and temperature conditions without affecting the over-all dimensions of the block. The spaces between the slats are so narrow, however, that the application of the finish to the blocks bridges over the spaces giving the appearance of a unified block on the wear surface of the finished product. The spaces between the slats are still vented to the atmosphere at the ends of the blocks after the finish is applied to the tops.

In the process disclosed by appellant, random length wood strips are first cut into slats of uniform length by conveying the strips in a direction normal to the longitudinal dimension of the strips past a slat cutter. The cut slats are assembled into groups of the size of a complete flooring block and conveyed in the direction of the longitudinal dimension of the slats to an endless drive chain which transports the blocks in a direction normal to the longitudinal dimension to an assembly drum. At the assembly drum, the slats assume a concave configuration, when viewed from the wear surfaces of the blocks adjacent to the drum, because of the curvature of the drum. The exposed outer surfaces of the slats become slightly separated to form the narrow spaces between the slats. While the slats are in this slightly separated position on the drum, an adhesive-bearing backing web is applied thereto and pressed to adhere the slats to the web. After parting from the drum, the groups of slats on the web are cut into individual flooring blocks.

The sole reference is:

Lindblom
(Denmark) 71,630 October 23, 1950

The cited reference relates to a method and apparatus for producing lath-reinforced roll roofing made of fibrous material. The laths are spaced and adhesively secured to the material.

In the method disclosed in the reference, a conveyor drum feeds the laths to a feed wheel which directs them to a conveyor which in turn feeds them while in abutting relationship about a roll. As each increment of laths moves about the roll in arcuate formation, an adhesively coated web is brought into contact with each successive lath at a particular point in its arcuate progression. The abutting contact of the laths while on the conveyor changes as they describe their arcuate path about the roll so that their adjacent outer edges are not spaced while retaining abutment of their inner edges. As each lath leaves the roll, it moves into the plane of the preceding lath. This widens the spacing of the inner adjacent abutting edges from one another, thus creating a spacing relationship whereby the spaces between the inner and outer edges are substantially equal. Lindblom states [1] that: "The angular size of the wedge-shaped space 33 and consequently the space between the slats on the web are determined by the diameter of the spacing roller 18 and the width of the slats."

The examiner rejected the claims in issue as unpatentable over Lindblom. He found and stated that:

" * * * The patent to Lindblom discloses slats that are conveyed by conveyor 22 to a convex surface 18 and backing means 2 is applied to the slats while the slats are on the convex surface to produce spans between the blocks. No invention would be involved in separating the slats into groups before attaching the backing or in severing the backing element to separate groups of slats from one another since these steps are obvious and produce no new and unobvious result. The

---

1. Appellant argued that the translation of the Danish patent supplied by the Patent Office in the Transcript of Record was not a sworn translation. At oral argument appellant presented a sworn translation supported by affidavit of Sigurd Moller

Thomsen. In deciding this case, we have considered the translation furnished by appellant, and note no material difference from the translation furnished by the Patent Office.

slats of Lindblom are not endless and therefore comprise a group and if one wanted a specific size of slats no invention would be involved in cutting the slats to the proper size.

"It is true as stated by the applicant that Lindblom does not disclose the grouping or the cutting step. But it is the position of the examiner that no invention is involved in providing the method of Lindblom with these steps since the end result is merely additive and provides no new and unobvious result."

The board, however, recognized that the claims in issue distinguish over Lindblom "in the step or steps of arranging the slats in separated groups of a predetermined unspecified number of slats in each group," but found nothing unobvious in eliminating every seventh slat, for example, in the process disclosed by Lindblom, assuming six slats are used in each block.

With reference to claim 28 which includes steps relating to moving of slats and groups of slats in a multiple of directions normal to each other or to the longitudinal slat dimension, the board held that this involved nothing more than "an arbitrary transportation of slats and groups from the point where they are cut to length in their attachment in groups to a securing element." And in consideration of the absence of specific disclosure by Lindblom of cutting strips of wood into slat lengths, the board held such to be a necessary and ancillary step, obvious to one skilled in the art, and inherent in the Lindblom process. It is apparent that the holding of the board in substance was that the distinction between the method claimed and the disclosure of Lindblom would have been obvious under 35 U.S.C. 103.

Appellant's claimed method and the disclosure of Lindblom present a combination of striking similarities affording cogent augmentation in support of the decision of the board. Both define a continuous method of applying an adhesive coated backing web to wood slats or laths. In common, are pressure rolls in aid of adherence of the slats to the backing. Both accommodate a plurality of slats moving in edge abutting contact in arcuate progression about a drum or roller. While the slats so move, the web is fed against the outer or over-all convex configuration of the plurality of slats. Each method discloses spacing of the slats from one another which spacing is determined by the thickness of the slats and by the diameter of the assembly drum. In the process of both methods the surfaces of a group of slats facing the assembly drum assume concave formation and the adhesive element is secured to the convex or outwardly-facing surface. The slats in both methods approach the drum in face abutting contact. This contact changes to edge abutment when progression changes from rectilinear to arcuate while passing onto the drum. Both disclosures show abutment of the slats taking place at the concave or inner surface and while adjacent slats or a given group of slats are so disposed, the backing element is secured thereto. When the composite product leaves the drum, it changes from an arcuate to a rectilinear path with the abutting edges separating to the same distance as those edges secured to the backing element.

Claim 28 sets forth various changes in slat direction. Direction changes are disclosed by Lindblom in that he feeds his slats along a table longitudinally in a direction normal to the longitudinal slat dimension. In subsequent progression, a group of slats traverses a path which is generally "transverse to said first direction." While moving on the conveyor to the web, the slats traverse a path which is "normal to the longitudinal slat dimension."

We are inclined to the view that the conforming similarities of the operative procedures of both disclosures for securing slats on a backing sheet in spaced relation are sufficient to produce a conclusion that the methods are substantially the same.

■ The issue here is obviousness over prior art. The claims of the pending application are therefore to be given the broadest interpretation which they will reasonably support. In re Application of Bisley, 197 F.2d 355, 39 CCPA 982, 990; In re Application of Thompson, 288 F.2d 955, 48 CCPA 944.

Appellant contends that the "conveying" step of claim 27 requires that a plurality of groups of slats be present in the arcuate path at any given time.

We find merit in and are persuaded to agree with the reasoning advanced by the solicitor that:

" * * * The arcuate path can be construed as part of the route which each group must traverse in turn. This interpretation can be supported by considering 'in an arcuate path' to modify either 'conveying' or the entire expression 'conveying * * * one another.' Appellant's view finds support if 'in an arcuate path' is considered to have reference only to 'consecutive groups spaced from one another' which, it is submitted, is not the 'broadest interpretation' contemplated in the Bisley decision. However, the claim also indicates that while each group is moving through the arcuate path, the composite wear surface defined by each ('a given') group of slats is concave. It is submitted that, given its broadest reasonable interpretation, the conveying step specifies that one or more groups of slats may be present in the arcuate path at any given time."

■ Appellant, in discussing limitations in his claims allegedly ignored by the board, points out that his assembly drum "has a relatively large diameter about its surface and is able to accommodate several groups of slats" while Lindblom utilizes a relatively small drum. It is noted that neither claim in issue contains an apparatus limitation requiring the use of a drum of relatively large diameter or even of a drum at all. It is axiomatic that a limitation not expressed in a claim should not be read therein. In re Freeman, 168 F.2d 81, 35 CCPA 1127.

It would appear obvious to one of ordinary skill in the art that the controlling factor relating to the number of slats which could be accommodated at one time in the arcuate path of a drum would be the diameter of the drum involving only an obvious modification of design. In order to practice appellant's claimed method, the use of a drum is not required.

Claim 27 calls for "maintaining the concave configuration of the composite wear surface of the slat groups while each slat thereof is secured to a common backing element for the group." Appellant contends for an interpretation of this step requiring *all* of the slats of a curved group to be secured to a backing element *before* the leading slat leaves the assembly drum.

We are constrained to agree with the solicitor that:

" * * * The 'maintaining' step is drawn so broadly that it embraces a procedure in which each slat is secured *in succession* to the common backing element. In appellant's method as disclosed, the adhesive coated backing web travels with the drum through at least 200 degrees of rotation of the latter * * *. In Lindblom, the corresponding amount of rotation is about 45 degrees. There is nothing in claim 27 which requires the backing element to travel with the drum for more than 45 degrees of its rotation." (Emphasis solicitor's.)

Claim 27 calls for the backing element to bridge the gap "between adjacent groups of slats." Neither the claimed method nor the Lindblom process produces impediment or inconsistency in the execution of this step whether there be a single group or a plurality of groups in the arcuate path.

It is obvious, therefore, that Lindblom discloses all of the aspects of the method set forth in claims 27 and 28 with the

exception of the concave configuration of the wear surface of the slats while being secured to the backing element and the conveying of the slats in separate groups.

Whether the product produced is called flooring or roofing, it has substantial similarities as noted hereinabove. We do not consider the term "parquet flooring units" to be a material limitation to claims drawn to the method of assembling slats. Similarly, whether a particular surface is designated "wear" or "non-wear" does not differentiate the method claimed from that of Lindblom wherein the same convex-concave relationship exists during the securing of the web to the slats. Lindblom suggests that the angular size of the wedge-shaped space and the spacing between the slats are determined by the diameter of the spacing roller and the width of the slats. It would seem to follow, therefore, that by appropriate dimensioning of the slats and size modification of the roll, Lindblom could produce flooring units with the same spacing between adjacent slats as occurs in appellant's product.

For the foregoing reasons, we *affirm* the decision of the Board of Appeals.

Affirmed.