55 CCPA

**Application of Howard B. CUMMINGS.**

**Patent Appeal No. 7857.**

United States Court of Customs
and Patent Appeals.

March 14, 1968.

\* Senior District Judge, Eastern District of
Pennsylvania, sitting by designation.

1. Consisting of Dracopoulos and Brewrink,
Examiners-in-Chief and Angel, Acting
Examiner-in-Chief. The author of the
opinion is not identified in the printed
record.

2. Serial No. 209,915, filed July 16, 1962.

3. Kirk-Othmer, Encyclopedia of Chemical
Technology, Second Edition, Vol. 4 (1964),
page 782, describes such casting as fol-
lows:

Ely & Golrick, Albert L. Ely, Jr.,
Cleveland, Ohio, for appellant.

Joseph Schimmel, Washington, D. C.
(Jere W. Sears, Washington, D. C., of
counsel), for the Commissioner of Pat-
ents.

Before WORLEY, Chief Judge, and
Judges RICH, SMITH, ALMOND,
and KIRKPATRICK.\*

SMITH, Judge.

This appeal requires us to review the
decision of the Board of Appeals[1] af-
firming the examiner's rejection on prior
art of claims 8 and 9 of appellant's ap-
plication.[2] The application is entitled
"Ceramic Casting Molds and Tech-
niques." There are other claims in the
application but they are not in issue here
as the board reversed the examiner's re-
jection of claim 10 and certain other
claims have been withdrawn from consid-
eration as relating to a non-elected in-
vention.

Appellant's invention relates to a meth-
od of making green ceramic ware by slip
casting.[3] The invention is best described
in connection with Fig. 1 of the applica-
tion drawing.

*Slip Casting.* In slip casting, a slip
(suspension of clay or other solid par-
ticles in water) is poured into a porous
plaster of Paris mold. The interior
surfaces of the mold conform to the ex-
terior surface of the ware to be formed.
As water is absorbed into the plaster
from the slip, the solid particles are
deposited on the mold interior surface.
This process may be continued until the
walls of the ware meet the center as in
solid casting, or the remaining slip may
be drained from the mold when the walls
are the desired thickness as in drain
casting. \* \* \*

FIG. I

In the figure, a mold 10 comprises a male inner mold half 11 and a female mold half 12, cooperating to provide an annular, cup-shaped cavity for producing an article such as a crucible. The inner mold half 11 is made of a porous material capable of absorbing the water from slip 21 poured into the mold cavity through a gate 14 to leave a de-liquified deposit upon the walls of the mold. The female mold half 12 is formed with a water-impervious casting surface.

In the casting operation, the suspending liquid is removed from the slip only through the porous inner mold half 11 with the result that a solidified slip is first formed adjacent the surface of that mold half and the thickness of the resulting layer gradually increases toward the water-impervious surface of the outer mold half 12 until solidified slip fills the entire mold cavity. Appellant states that this process results in the slip solidifying into a substantially homogeneous mass. He contrasts that result with the product produced by prior art processes where both halves of the mold are porous and the water from the slip is absorbed by, and solid slip is built up on, both opposing surfaces defining the mold cavity. When the cavity becomes filled in the latter process, a cleavage line may occur where the two built-up solid portions of the slip meet at the center of the cavity, resulting in a faulty product.

The appealed claims are:

8. A method of slip casting comprising pouring a slip into a substantially closed, annular mold cavity formed essentially of two casting

surfaces, removing water from the slip through one casting surface, and simultaneously preventing water from permeating through the other casting surface so that the slip is caused to solidify substantially uni-directionally.

9. A method of slip casting comprising providing porous bodies which cooperate to form a substantially closed mold cavity, rendering approximately one-half of the surfaces of said cavity impermeable and keeping said cavity filled with a slip until the cavity is filled with a relatively solidified cast mass of particle, said slip being cast by uni-directional solidification proceeding toward said impermeable surfaces.

The prior art relied on in the rejection is:

| | | | |
|---|---|---|---|
| Lawrence et al. | (Lawrence) | 1,337,663 | April 20, 1920 |
| Casselman | | 1,692,887 | November 27, 1928 |
| Austin et al. | (Austin) | 2,534,653 | December 19, 1950 |

Lawrence relates to molding water closet bowls by pouring slip into a plaster mold, "which plaster absorbs a large part of the water from the liquid which has the effect of causing the clay to become dense adjacent to the plaster." According to the specification:

As this dense thickness of clay gradually becomes thick on account of the absorption of the mold the closet bowl is gradually formed.

Although the Lawrence mold is composed of absorbent material, a portion of the core at the location for the opening from the main chamber of the bowl to the drain trap passage is covered with nonabsorbent material in order that the usual absorption of water to form a thickness of clay does not occur on the covered surface.

Casselman discloses a method of making clay articles in the form of blocks. He refers to a previously known casting process utilizing a sectional mold made of plaster of Paris and provided with a gate into which clay slip is poured. That process, he points out, is subject to "a possibility of voids occurring in the blocks due to the fact that water leaves the cast block in all directions." The patentee proposes avoiding that difficulty by making a mold with a porous bottom, impervious sides and a top cover, with the result that absorption of water from the slip takes place only through the porous bottom surface.

Austin is relied upon only for a portion of the specification which acknowledges a prior process of slip casting a composite article. That process is described later in this opinion.

The examiner rejected claim 8 as "lacking novelty under 35 USC 102(a) over either Casselman or Austin." He rejected claim 9 as unpatentable over Lawrence alone or in view of either Casselman or Austin "under 35 USC 103."

██ As to claim 8, the board reversed the rejection based on Casselman but affirmed the rejection predicated upon Austin. Thus, the sole issue before us as to claim 8 is whether that claim is anticipated by Austin. On the basis of the record and arguments, we agree that it is so anticipated.

The subject matter relied on in the rejection on Austin is a previously known method of producing a composite refractory nozzle, described in the reference as follows:

* * * a multiple-mold slip-casting process in which the lining composition is prepared as a suitable slip, poured into a nonabsorbent mold, and allowed to stand until the desired lining thickness is built up around an absorbent internal core. The excess lining slip is then drained out of the non-

absorbent mold; an absorbent mold conforming to the exterior surface of the final composite body is substituted therefor; a slip comprising the body composition is poured into the porous mold and allowed to set until solid. * * *

The first portion of that process, i. e., that part which forms the lining portion of the final article, clearly meets the terms of the process defined in claim 8. It is true that the procedure followed after the excess lining slip is drained off, including the replacement of the outer mold with an absorbent mold, results in a different operation for completing the formation of the composite article. However, that does not negate the anticipatory significance of the process for forming the lining element. Contrary to the position of appellant, that element exists as an article even though there is no suggestion that it be removed from the internal core. Also, as observed by the examiner, claim 8 defines the process as "comprising" the specified steps and thus does not preclude additional operations employed in the prior art process for providing the body portion of the final composite article.

Appellant contends that claim 8, in referring in its preamble to a "slip casting" process, "implicitly" calls for "solidification of clay to fill all the space between opposed mold surfaces," a condition which plainly is not met by the first portion of the prior art process relied upon in the rejection. However, that portion of the process does involve the casting of slip and on its face appears to fall clearly within the term "slip casting." In this connection, it is well established that claims of a pending application are given the broadest interpretation they will reasonably support. In re Tibbals, 316 F.2d 955, 50 CCPA 1260 (1963).

After thorough consideration, it can only be concluded that the record here does not establish that the term "slip casting" is necessarily limited to "solid casting" or "solid slip casting" where the mold cavity is filled with solid slip ma-terial to the exclusion of a process where the casting of slip to form an article is terminated when the desired thickness is attained, even though the cavity is not completely filled with solid material. It is thus a moot question whether the reference to "slip casting" in the preamble, even if the expression had the exclusive significance appellant implies, would be sufficient to distinguish over the prior art process disclosing the precise steps recited.

Appellant makes the contention, supported by an affidavit, that a composite article formed by the complete prior art process described in Austin would be subject to the cleavage problem which is alleged to be avoided by the process disclosed in the present application. However, the output of the *first part* of the Austin prior art process, which is what is relied upon in the rejection, obviously would no more be subject to the problem of cleavage than the output of appellant's disclosed method.

■ With respect to claim 9, the examiner's rejection as obvious over Lawrence alone or in view of Casselman or Austin was sustained by the board. We do not agree with the examiner and board on the issue of obviousness thus raised.

Claim 9 is more restricted than claim 8 in calling for approximately one-half of the surfaces of the cavity in the mold to be impermeable and in requiring that the cavity be kept filled with slip "until * * * [it] is filled with a relatively solidified cast mass of particle." In Lawrence, only a relatively small proportion of the mold surface is impermeable and that is described as for the specific purpose or providing an opening in the molded body. The reference contains no disclosure that the impermeable surface limits the path of the escaping water to substantially a single direction.

Also, it is not disclosed that the casting process of Lawrence involves keeping the mold cavity filled with slip until the cavity becomes filled with a solidified cast mass. It appears rather that, in the Lawrence process, as observed by the

solicitor in his brief, "[i]ntroduction of slip is continued only to the point of forming the closet bowl walls to the desired thickness, without obstructing or caking up the water trap passage."

From the shape of the Lawrence mold and the shape of the water closet bowl to be produced thereby, it seems apparent that continuing the casting process until the mold cavity is filled would result in obstructing or, in fact, eliminating the water trap passage. Thus, so continuing the process cannot be considered obvious to one of ordinary skill in the art, whether Lawrence is considered alone or in view of either secondary reference.

It likewise does not appear that it would be obvious to such a person to render approximately one-half of the cavity surfaces of Lawrence's mold impermeable. In the first place, Lawrence suggests no reason for increasing the relative size of the small impermeable area there provided. It is true that Casselman discloses making a relatively large proportion of the cavity surface impermeable for the purpose of avoiding faulty products by preventing water in the slip from passing through the cavity surface in all directions and might suggest applying that principle to molds for other articles where it is obvious how it might be so applied. However, the particular configuration of the mold and the article to be cast in the Lawrence patent leaves it unclear on the present record how such an adaptation could be applied to the mold disclosed by Lawrence.

The board did observe, in what it apparently regarded as merely a comment on the breadth of claim 9, that the "shape of the cavity and the position of the impermeable one-half portion [of the mold cavity surfaces] is not particularly defined." [4] We do not think that fact lends support to the present rejection on obviousness. It plainly does not establish a reason why one skilled in the art would find it obvious to make one-half of Lawrence's cavity surface impermeable.

The solicitor emphasizes the pertinency of the disclosure of Casselman to the problem appellant solves and states that claim 9 "poses nothing which would not have been obvious to one of ordinary skill in the art on Casselman alone." We do not think that the particular circumstances here permit us to assess that contention. Thus, the action of the examiner and the decision of the board leave us uninformed whether they regarded Casselman as either disclosing a process in which the mold cavity is filled with slip until the mold cavity is filled with a solidified mass or as rendering such procedure obvious. Moreover, appellant, accordingly, has had no occasion to advance his views on those points which would be essential to determination of the question of obviousness in view of Casselman alone.

The decision is affirmed as to claim 8 and reversed as to claim 9.

Modified.

ALMOND, Judge, concurring in part and dissenting in part, with whom KIRKPATRICK, J., joins.

I agree with the affirmance of claim 8. However, I am unable to join the majority in its reversal of the board's decision on claim 9.

Both Casselman and Austin teach slip casting in a mold having a single porous face through which water migrates, and other impervious mold faces which may represent one-half, more or less, of the total mold surface. Austin casts by unidirectional solidification proceeding toward the impermeable surface. Casselman's invention is stated to be the replacement of prior art permeable surfaces with impermeable ones. Lawrence

---

4. Appellant raises a question whether the board made a new rejection of claim 9 under 35 U.S.C. § 112 in its original decision, although he states that the board "backed off" on that point on reconsideration. We are satisfied from the board's comments on reconsideration, including the statement that it had "agreed with the Examiner's application of the references including his reasons for doing so," that there is no rejection under 35 U.S.C. § 112 in this case.

teaches formation of a permeable mold and a method of rendering a portion of the mold surface impermeable.

I see nothing unobvious in forming the impervious mold faces of Casselman and Austin by the method taught by Lawrence.

The only recitation of the claim not made obvious by this combination of references is " * * * keeping said cavity filled with a slip until the cavity is filled with a relatively solidified cast mass of particle * * *." The examiner commented in regard to this recitation: "Keeping a mold cavity filled with slip during a molding process is a notorious common expedient as shown by Wadman[1] * * *." The Wadman drawing shows an annular mold for slip casting having a reservoir of slip which feeds the mold as shrinkage due to water loss occurs in the mold. I agree with the examiner that this obvious expedient is without patentable significance in the claim.

I would therefore affirm the decision of the board as to claim 9.

1. Wadman 2,288,661—July 7, 1942. This patent was listed as a reference in the board's decision, but not mentioned in its discussion as being specifically relied upon.