57 CCPA

**Application of Vernon A. PHELPS, Merwin F. Read and Frederick E. Read.**

**Patent Appeal No. 8263.**

United States Court of Customs and Patent Appeals.

March 19, 1970.

Barnes, Kisselle, Raisch & Choate, Detroit, Mich., attorneys of record, for appellant; John M. Kisselle, Basil C. Foussianes, Detroit, Mich., of counsel.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents; Jere W. Sears, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, and LANE, Associate Judges; and FORD, Judge, United States Customs Court, sitting by designation.

8. See note 4 *supra*.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals, adhered to on reconsideration, affirming the rejection on prior art of appellants' method claims 3, 6–11 and 17 in their application for "Close Tolerance Gasket Making."[1] Other method claims stand allowed.

Claims 3, 6 and 17 may be denominated as a first group of which claim 17 is representative:

17. In the method of making square cut gaskets having close tolerances from a tube of soft rubber having a hardness of less than 80 durometer on the A scale, the steps which comprise mounting said tube over a mandrel, rotating the mandrel about its axis, moving a cutting tool made of a material which has a high resistance to abrasion, a low coefficient of friction and is a good conductor of heat into contact with the periphery of said tube and causing relative movement between said tube and said tool in a direction parallel to the axis of said mandrel while said mandrel is rotating.

These claims call for turning of the outer surface of a soft rubber tube as in a lathe. It is noted that claim 17, the broadest, merely requires the use of a single "cutting tool made of a material which has a high resistance to abrasion, a low coefficient of friction and is a good conductor of heat." More specific claims 3 and 6 require use of "diamond" cutting tools. Claim 6 calls for the use of tandem cutting tools, whereas claim 3 specifies a peripheral work speed "of at least 1000 feet per minute."

A second group, claims 7–11, call for making of "square cut gaskets" by revolving a soft rubber tube in engagement with a severing tool moved inwardly in a straight line under controlled fluid pressure. Of this group, claim 9 is the broadest, in not requiring use of a "non-rotating" severing tool and "hydraulic" fluid therefor as in the other claims. Dependent claim 10 calls for axially indexing the severing tool between successive cuts. Claims 8 and 11 provide for pregrooving the rubber tube about the line of severance by a chamfering tool in order to form beveled gasket surfaces. In claim 11 the pregrooving and severing are done simultaneously at spaced points under hydraulic pressure.

While it is noted that all of the claims refer to "close tolerances," none, however, require maintenance of any specific tolerance. Referring to the specification, the limit of "close tolerances" may lie between 0.008 inch and 0.003 inch.

The references are:

| | | |
|---|---|---|
| Poulain | 1,346,056 | July 6, 1920 |
| Lawson | 488,361 | December 20, 1892 |
| Merritt et al. (Merritt) | 1,086,606 | February 10, 1914 |
| Belada | 2,476,530 | July 19, 1949 |
| Hanson | 221,552 | November 11, 1879 |

Poulain discloses a diamond-point lathe tool "for cutting or working all materials, such as steel, bronze, fiber, ebonite, paper, rubber and other materials * * *."

Lawson discloses a tandem tool holder for a lathe for making plural cuts in one axial pass.

Merritt relates to "machines for cutting circular packing rings, or gaskets,

1. Serial No. 279,939, filed May 13, 1963, a division of application serial No. 801,918 filed March 25, 1959.

\* \* \* from cylindrical tubing. We have examined this reference and find that it supports the examiner's analysis of its teachings as follows:

\* \* \* (1) mounting a rubber tube on a rotating mandrel; (2) rotating the tube about the axis of the mandrel; (3) moving a cutting tool (rotatable or non-rotatable) radially inward; (4) moving the tool radially outward; (5) indexing the tool a predetermined amount; and (6) moving the tool radially inward.

The purpose of the latter movement is to sever sucessive rings. While the patent indicates a rotary cutter, it is stated: "For some purposes it may be found sufficient or even preferable to use a non-rotating cutter, of a form suited to the cut to be made." Manipulation of a cutter (steps 3, 4 and 6 above) is accomplished by a mounting slide provided with a cam pin or roll engaging with a cam carried by a vertical driving shaft. The angular disposition of the slide is adjustable so as to cut the gasket at the angle required. The patent states that "equivalent mechanical devices may be substituted for effecting the desired movements."

Belada relates to "a machine for cutting tubes of rubber, rubber composition or other material." The machine is adapted "for cutting tubes of rubber" into short lengths or rings for sealing gaskets. A nonrotatable slicing blade is employed which is rocked in and out of engagement with revolved rubber tube stock by pneumatic means. The rocking arm is long compared to the thickness of the rubber tube such that the motion of the cutting blades might be considered effectively linear. The cutter bar is moved to and from its operative position by a pair of air-operated piston motors.

Hanson shows a turning chisel having one portion which forms a groove in the object to be cut and a second position to later sever the object at the groove.

The examiner rejected claims 3 and 17 as unpatentable over Poulain under 35 U.S.C. § 103, pointing out that the ref-

erence teaches a diamond cutting tool for working on rubber material, the object being to provide a tool of high resistance for turning the material in a lathe. It was the examiner's view that Poulain "anticipates the method steps of claims 3 and 17 of mounting a tube of rubber over a mandrel" (shown to be old by Merritt), rotating the mandrel at a peripheral speed of at least 1,000 feet per minute and turning the rotating workpiece with the diamond cutting tool. The examiner felt that peripheral speed was a matter of choice with the operator in the method of Poulain and that the patent "anticipates turning a rotating rubber workpiece having a hardness of less than 80 durometer on the A scale." With reference to the limitation calling for rubber "having a hardness of less than 80 durometer on the A scale," it is noted that applicants had contended that there is nothing in the patent to Poulain to suggest turning a rubber workpiece having a hardness of less than 80 durometer on the A scale and that Poulain's teaching is directed to turning hard materials such as steel and bronze and consequently the rubber referred to is hard rubber. In rejecting this contention as untenable, the examiner stated:

\* \* \* Poulain, while teaching workpieces of steel and bronze, further teaches workpieces of fiber, ebonite, paper, rubber, and other materials. It is noted that Poulain lists both *ebonite* (hard rubber) and *rubber*. It follows that Poulain would not have listed rubber if he had reference to only hard rubber as he already anticipated hard rubber workpieces with the inclusion of ebonite, and the inclusion of rubber, in view of ebonite, was intended to teach the machining of soft rubber. [Emphasis supplied.]

It is pertinent to further point out that in his final rejection the examiner stated that:

The hardness of the material worked and the particular dimensions of the cutting tool are held to be a matter of choice or experiment for the par-

ticular operation, well within the scope of one having ordinary skill in the art.

We think it clear from the context of the examiner's observations that the rejection of claims 3 and 17 were predicated on 35 U.S.C. § 103 notwithstanding his somewhat liberal use of the word "anticipates." It is so accepted and treated by the board as well as by counsel of record.

The examiner rejected claim 6 on Poulain in view of Lawson's teaching of tandem tool operation, holding it "obvious to one having ordinary skill in the art to use the teaching of Lawson and design the cutter used in the cutting operation as taught by Pouplain with a plurality of diamond cutting tools in which the trailing tool projects radially inward beyond the lead cutting tool."

The second group of claims, 7–11, involve different references. The examiner stated that claims 7, 9 and 10 "stand rejected as unpatentable over Merritt et al in view of Belada under 35 U.S.C. 103," stating the six steps in the teachings of Merritt, viz. (1)–(6) hereinabove set out, and applying the teaching disclosed in Belada of "controlling the infeed of non-rotating cutters to produce gaskets by means of controlled pressure and air-operated piston and cylinder means." He considered it obvious "to use the teaching of Belada and design the infeed means of Merritt et al. with controlled fluid piston and cylinder means, the switch from air to a liquid being well within the scope of one having ordinary skill in the art." The same basis was relied on in rejecting claims 8 and 11 "further in view of Hanson," who teaches pregrooving a rotating workpiece prior to severing to be old and well known in the art. It would, therefore, said the examiner, be obvious to use the teaching of Hanson and pregroove the workpiece of Merritt.

The board affirmed "for reasons pointed out by the Examiner" and stated that "the references make it obvious that the tools disclosed therein could be used to make gaskets having close tolerances."

Appellants advance the contention that inasmuch as the appealed claims require turning or cutting to tolerances "on the order of 0.003 inches or less," such degree of tolerance is not obvious on the basis of prior art. It is noted, however, that the claims specify "close tolerances" with no limitation relating to the degree of tolerance embraced thereby. With respect to this contention, the board held:

It is urged that since the specification indicates that the term, close tolerances, means tolerances of ±0.003 inches or less, the claims do specify the close tolerances which are achieved. Appellants may not read into claims limitations not expressed therein although emphasized in the specification. In re Custer, 36 CCPA 927, 81 USPQ 99 * * *, 173 F.2d 226.

In In re Tibbals, 316 F.2d 955, 50 CCPA 1260, this court considered it "axiomatic that a limitation not expressed in a claim should not be read therein." Also, in In re Soderquist, 326 F.2d 1016, 51 CCPA 969, this court stated:

The mere fact that the specification does disclose engagement of the inner surface of the band is not controlling since undefined features disclosed in a pending application cannot be read into the claims to distinguish from the prior art.

While the term "close tolerances" is employed in the specification, it is not defined thereby. It appears that appellants are relying on the affidavits of Conner and Krandall to tie the claims to the ±0.003 asserted tolerance. The fact remains that the claims are not so restricted and embrace within the scope of their terms processes which can be reasonably carried out to yield gaskets not having the asserted tolerance. Thus, the production of gaskets having tolerances within 0.003 inch, even if considered unobvious, would not necessarily result from practice of the *claimed* method

steps by one of ordinary skill in the art. The effect, therefore, is that one can hardly contend as a general observation that the *claimed* invention, considered as a whole, produces an unobvious result. We must agree with the solicitor that neither affidavit is pertinent to the broad methods of the appealed claims nor to the relevant teachings of the principal references.

Both affiants state that the use of "a tool having the hardness of a diamond" would not have occurred to them. We have hereinbefore discussed the examiner's application of the pertinent language appearing in Poulain and his interpretation thereof. We consider this interpretation reasonable and sound and that it would be so interpreted by one skilled in the subject art.

It is noted that Conner states that he had read each of the references "cited by the Examiner in the above-entitled application." This assertion does not apply to Merritt, the basic reference relating to the second group of claims,[2] since it had not been invoked when the affidavit was composed. This circumstance has direct bearing on the pertinency of Conner's remarks concerning "rotary or swinging tools." Merritt teaches that it may be found "preferable to use a nonrotating cutter, of a form suited to the cut to be made." It is apparent that the motion for supporting Merritt's slide is linear.

Appellants contend that in the accurate turning of soft rubber, the fact that high-speed steel and tungsten carbide were tried without success would suggest to a person skilled in the art that a diamond-type tool would not be successful. This argument apparently derives from language in the specification relating to prior attempts with "high speed steel and tungsten carbide" which proved completely uneconomical because due to "high abrasive action" the life of the tools is extremely short.

From immediately succeeding and relative language in the specification that it is not possible in mass production to accurately form the periphery of the tube of soft rubber by using high-speed steel and tungsten carbide, the obvious conclusion is that the life of the tools is too short for economical mass production in that they wear away due to abrasive action. Appellants' argument here is addressed only to the first group, viz. claims 3, 6 and 17. The solicitor argues, convincingly and with merit we think, that for "low output custom production embraced by these claims, why shouldn't one ordinarily skilled in the art consider use of a tungsten carbide tip or an obvious equivalent, such as a diamond?"

Upon consideration of the record including the affidavits of Conner and Krandall, the cases cited, the contentions asserted and the arguments of counsel, we are not persuaded of reversible error in the decision of the board, which is accordingly affirmed.

Affirmed.

---

2. The "above-entitled application" was parent application serial No. 801,918 in which both affiants filed affidavits on February 18, 1963. Copies were filed in the instant case two years later. Merritt was never cited in the parent application. It was cited in the final rejection March 1, 1965.