**Application of Lawrence W. DAILEY.**
**Patent Appeal No. 8936.**

United States Court of Customs and Patent Appeals.
June 28, 1973.

Baldwin, J., concurred and filed opinion.

Edward J. DaRin, John P. Grinnell, Christie, Parker & Hale, Pasadena, Cal., John A. Finken, Wynne & Finken, Washington, D. C., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., John W. Will, Classification Division, U. S. Patent Office, of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Appeals, affirming the rejection under 35 U.S.C. § 103 of claim 1 in appellant's application, serial No.

669,950, filed September 22, 1967, entitled "Method for Introducing Hydrogen into a Hydrogen Consuming Reactor Circuit," as unpatentable over Jackson.[1] Claims 3–15 have been allowed. We affirm.

*The Invention*

Claim 1, with reference numerals inserted, read in conjunction with the following excerpt from the application drawing, is illustrative of appellant's claimed invention:

[A7553]

---

1. In a relatively high pressure hydrogen consuming process of the type wherein hydrocarbon feed material [28] is introduced into a hydrogen consuming reactor circuit [10] and converted in at least one reactor [26] to form a reactor effluent stream [30] containing reactor products with the conversion occurring in the presence of hydrogen from a vapor stream [40], an improvement in the method of introducing the hydrogen into the hydrogen consuming reactor circuit comprising the steps of:

(a) producing a hydrocarbon diluent from the reactor effluent having a relatively high molecular weight compared to hydrogen;

(b) combining the diluent with hydrogen at a relatively low pressure to form a resultant stream [20] having an average molecular weight which enables compression of such stream by centrifugal compression to an introduction pressure which is sufficient for the resultant stream to enter the hydrogen consuming reactor circuit;

(c) compressing the resultant stream in at least one centrifugal compressor [24] to the introduction pressure;

(d) introducing the compressed resultant stream into the hydrogen consuming reactor circuit;

(e) separating at least a substantial amount of the diluent from the hydrogen; and

(f) introducing the hydrogen separated from the diluent into the vapor stream.

Appellant further discloses in the specification that:

In addition, the hydrocracker reactor circuit is important to illustrate the point and condition of resultant stream entrance into the circuit. The point of introduction [34] is where the pressure of the reactor effluent and resultant stream 20 are essentially equal. Moreover, the introduction point is preferably where the temperature of the reactor effluent stream and the resultant stream are also essentially equal.

I. U.S. 3,401,111, filed July 5, 1966, issued September 10, 1968.

The liquid portion of the reactor effluent stream acts as a sponging medium to take out diluent and purify the vapor stream.

The mixed stream 34 which includes "reactor products, recycle gas, possible recycle liquid, diluent, and hydrogen" is reduced in temperature in heat exchanger 36 for the separating step in separator 38 into the vapor stream 40 ("50 to 90 mol per cent hydrogen") and liquid stream 42. The vapor stream 40 is compressed in compressor 44 to provide a sufficiently high partial pressure of the hydrogen as required in the reactor.

### The Prior Art

Jackson discloses a process that is quite similar to appellant's disclosed process and differs mainly in that the hydrogen-diluent mixture ("90% hydrogen") after being compressed is introduced directly into the vapor stream that is introduced into the reactor. The effluent stream exiting from the reactor of Jackson which includes the reactor product, the diluent, and unreacted hydrogen is directed to a separator where unreacted hydrogen is separated and recycled into the vapor stream containing the compressed hydrogen-diluent mixture, and the diluent and reactor product are passed out of the reactor circuit.

### The Rejection

As stated in the solicitor's brief:

The examiner stated in his final rejection that "while the Jackson reference discloses passing the hydrogen and diluent under higher pressure directly into the hydrogenation zone [reactor], since the diluent does not affect the reaction, it would be an obvious variant to separate the diluent under the high pressure by conventional means in order to avoid diluting the hydrogen required for the hydrogenation process," and that "such an obvious variant over the teaching in the Jackson reference is within the skill of the art, not amounting to invention [unobviousness]." Since * * * [that] rejection was not reversed by the Board, * * * it is appropriately before [us]. In re Stephens, 47

CCPA 1028, 278 F.2d 980 [950] [126 USPQ 190].

The board held that claim 1 read directly on the Jackson disclosure and gave its reasoning as follows:

That the copied claim, through step (d) thereof, reads upon the disclosure of Jackson does not appear to be controverted by appellant. Step (e) is performed in [the] separator * * * of the reference and step (f) by [the] hydrogen recycle * * *. Both appellant and the examiner seem to be reading limitations into the claims which are not present therein.

A rule 132 affidavit, by one Beavon, stated that the effect of not removing the diluent as appellant discloses to be:

(a) a greater amount of gas must be circulated to meet the hydrogen demand of the reaction system; or

(b) the total pressure must be increased to obtain in a given volume the amount of hydrogen required for the reaction.

Appellant concludes that the affidavit is evidence that the partial pressure of the hydrogen "is raised" by the diluent removal and accordingly, a lesser amount of hydrogen-diluent mixture must be compressed. The board considered the affidavit to be "not relevant" insofar as all the claimed steps are performed by the Jackson patent. The board additionally noted that the affidavit did not take the compressor 44 into consideration. In his brief appellant states:

With reference to the drawing accompanying the application step (e) requires separating at least a substantial amount of the diluent from the centrifugally compressed hydrogen in separator 38 while step (f) calls for introducing compressed hydrogen after diluent separation into the vapor stream 40 for feed to reactor 26 within the hydrogen consuming circuit.

In removing the diluent, the effective particle pressure of hydrogen is raised to substantially the pressure achieved during centrifugal compression of the resultant gas stream.

From any reading of Jackson it is evident that the hydrocarbon diluent is *never* separated from the resultant stream following centrifugal compression to permit the result previously set forth. Yet, the Board found this teaching in Jackson from what is believed to be a patent misconstruction of the Drawing.

## OPINION

It is abundantly clear, as noted in the above description, that Jackson separates the diluent from the effluent stream after and appellant before the hydrogen-diluent mixture passes through the hydrocracking reactor. But appellant's reliance on his *disclosure* is misplaced. The *claim* does not require diluent separation ahead of the reactor and makes no distinction between diluent separation before and after introduction of the mixture into the reactor. Appealed claims in an application are given their broadest reasonable interpretation. In re Cummings, 390 F.2d 1018, 55 CCPA 951, 157 USPQ 47 (1968). Accordingly, we agree with the board that steps (a)–(e) of claim 1 are disclosed in the Jackson reference. Though the board's rejection is couched in language evocative of 35 U.S.C. § 102, it sustained the examiner's rejection under 35 U.S.C. § 103, as do we. A complete disclosure of the claim is the "ultimate or epitome of obviousness." In re Kalm, 378 F.2d 959, 962, 54 CCPA 1466, 1470 (1967).

If steps (e) and (f) were interpretable as appellant argues, i. e., to require separation before introduction to the reactor, the rejection under 35 U.S.C. § 103 would not be erroneous. Appellant submits no evidence probative of unexpected results. The affidavit plainly does not establish that the amount of hydrogen-diluent mixture required to be compressed in compressor 24 would be reduced. It is not apparent that the circulation of diluent through the reactor is of consequence with respect to the requirements of compressor 24. If the "effective or partial pressure" of the hydrogen is governed by Dalton's Law on Partial Pressures as appellant states, we have been provided with no factual evidence that partial pressure "is raised" by the removal of the diluent. Moreover, we note, as did the board, that appellant employs compressor 44 between his separator and reactor. That the partial pressure of the hydrogen, as stated by the affiant, "will become essentially equal to the total pressure generated" during centrifugal compression of the resultant gas stream would hardly have been unexpected. It is elementary that the level of partial pressure would depend on the mol per cent of hydrogen in the resultant stream. The decision of the board is affirmed.

Affirmed

BALDWIN, Judge (concurring).

I agree that claim 1 is obvious within the meaning of 35 U.S.C. § 103. Such being the case, I see no reason to read a section 102 rejection into the board's opinion, which affirmed a section 103 rejection.

Both Jackson and appellant are concerned with the use of diluent in order to render efficient the use of centrifugal compressors for introduction of hydrogen into what Jackson calls the "system 'loop'." The difference between the system which appellant interprets his claim to cover and the specific system *depicted* in Jackson can best be appreciated by considering the portion of appellant's drawing reproduced in the majority opinion, using appellant's reference numbers for the identical apparatus shown in Jackson. In Jackson, the output line from the centrifugal compressor (24) is not fed into the loop prior to Jackson's cooling system (36) as shown in appellant's drawing. Rather, the hydrogen plus diluent is fed into the line (40) between Jackson's separator (38) and his recycle hydrogen compressor (44). What the particular advantage may be to feeding the mixture into that line Jackson doesn't say. In discussing the problem, Jackson states (again substituting appellant's numbering):

In general, the discharge from compressor [24], may enter the system at any suitable location retentive of the

**1402**

recycle. Thus, for example, the discharge from compressor 15, may be * * * introduced elsewhere into the system "loop," as to the suction side of compressor [44]. The most advantageous point for introduction of hydrogen makeup from compressor [24] into the system "loop" is subject to calculation for a given case in hand.

In my view it would have been obvious for one of ordinary skill in the art, should he be bothered by the fact that Jackson, for no apparent reason, puts his diluent through compressor 44, the reactor 26, and the cooling system before getting rid of it in separator 38, to obviate that problem by adding the mixture just prior to the separation system.

The Beavan affidavit adds no support to appellant's case. It does not suggest that all of the factors discussed therein were not either known or obvious to those skilled in the art at the time appellant's invention was made. At best, the affidavit indicates that appellant's system had an advantage over Jackson's system, but it does not establish that that advantage would have been anything other than obvious to those skilled in the art.